UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL SMITH,<br>   Plaintiff,<br><br>   v.<br><br>ZIPCAR, INC.,<br>   Defendant. | )<br>)<br>)<br>) Civil Action No. 13-11430-PBS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

December 19, 2013

Saris, C.J.

**I. INTRODUCTION**

Plaintiff Michael Smith, a former executive officer of Defendant Zipcar, Inc. ("Zipcar"), alleges that Zipcar violated Mass. Gen. Laws ch. 93A when it deceitfully offered him stock options in his employment contract, knowing an impending merger with another company would render those stock options worthless. Defendant moves to dismiss. After a hearing, the Court **ALLOWS** the motion to dismiss.

**II. FACTUAL BACKGROUND**

The alleged facts, culled from the relevant portions of the Second Amended Complaint (Docket No. 36), are taken as true for purposes of this motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009).

1

Zipcar provides a "car share" program to its customers, who rent motor vehicles from various locations. In September 2012, Zipcar asked an executive search firm to assist in hiring a new Chief Technology Officer. The search firm screened and recommended Plaintiff, then a Chief Technology Officer for Disney Interactive Media Group. Plaintiff has two decades of experience working with a variety of technology companies, including Google and Microsoft. At the time, Plaintiff was weighing multiple employment offers.

Over the course of fall 2012, Plaintiff met with various Zipcar executives to discuss his potential employment and compensation. As part of this process, Plaintiff emailed Zipcar a "white paper" describing the challenges of Zipcar's current approach to technology, and suggesting changes that could benefit the company. Zipcar's Chief Executive Officer complimented Plaintiff on the ideas expressed in this document. During negotiations, Plaintiff repeatedly communicated the priority he placed on stock options as part of his compensation package and informed Zipcar representatives that a favorable stock option plan would be key in his decision. Consequently, Zipcar proposed a compensation package with substantial stock options.

After some haggling back and forth, Zipcar presented Plaintiff with an updated offer letter dated December 11, 2012. The letter offered Plaintiff the position of Executive Vice

President, Chief Technology Officer. The compensation package included an option to purchase over one hundred thousand shares of Zipcar stock, subject to certain terms and conditions. Plaintiff signed the offer letter the very next day. The parties agreed to an official start date of January 21, 2013.

Meanwhile, Zipcar was engaged in negotiations with Avis Budget Group, Inc., a traditional car rental company, regarding Avis's potential purchase of Zipcar. Zipcar and Avis signed a merger agreement on December 31, 2012. Zipcar did not inform Plaintiff of any potential merger. When Avis completed its acquisition of Zipcar on March 14, 2013, Zipcar stock ceased being traded publicly.

Plaintiff began working at Zipcar in January 2013. When he voiced disappointment that the stock options promised him would evaporate after the Avis merger, Zipcar's CEO assured Plaintiff that either Zipcar or Avis would create an incentive package to replace the vanished stock options, but Avis opted to offer Plaintiff nothing. On March 5, 2013, Plaintiff gave thirty days notice to Zipcar that he planned to leave for "Good Reason" as provided for in his offer letter. Three days later, Zipcar terminated Plaintiff's employment.

### III. DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a

claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); see also Iqbal, 556 U.S. at 678. Dismissal for failure to state a claim is appropriate where pleadings fail to set forth factual allegations respecting each element necessary to sustain recovery under a legal theory. Gagliardi v. Sullivan, 513 F.3d 302, 304 (1st Cir. 2008).

The Massachusetts Consumer Protection Law prohibits unfair and deceptive business practices by entities conducting trade or commerce in the Commonwealth. Mass. Gen. Laws ch. 93A, § 2. This statute "does not provide a remedy for disputes arising out of an employer-employee relationship." Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 539 (Mass. 2011). It is well-established that "employment agreements between an employee and the organization of which he is a member do not constitute 'trade' or 'commerce' as those terms are defined" in chapter 93A. Manning v. Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1983). Put simply, "[a]n employee and an employer are not engaged in trade or commerce with each other." Id.; see also Falmouth Ob-Gyn Associates, Inc. v. Abisla, 629 N.E.2d 291, 291 n.1 (Mass. 1994) (noting that chapter 93A "does not apply to claims arising out of an employment relationship").

Zipcar's representations about stock options came before Plaintiff signed his employment agreement, and thus before he officially became an employee. Neither the Massachusetts Supreme

4

Judicial Court nor the Massachusetts Appeals Court has ruled on the applicability of chapter 93A to misrepresentations made prior to employment. Other courts have not recognized a chapter 93A cause of action for conduct occurring during the hiring process, in anticipation of employment. E.g., Whelan v. Intergraph Corp., 889 F. Supp. 15, 20-21 (D. Mass. 1995) (dismissing chapter 93A claim arising out of employer's recruitment process); Hoffman v. Optima Systems, Inc., 683 F. Supp. 865, 871 (D. Mass. 1988) (dismissing chapter 93A claim pertaining to disputes over "oral employment contract negotiated" before plaintiff's employ); Aretakis v. General Signal, Inc., 2006 WL 1581781, at *9 (D. Mass. June 7, 2006) (granting summary judgment to employer where "claims arise out of the methods used by the Defendants to recruit [plaintiff]"); Deangelis v. Weston Associates Mgmt. Co., Inc., 23 Mass. L. Rptr. 643, at *4 (Mass. Super. Ct. Apr. 7, 2008) (granting summary judgment to employer where plaintiff alleged employer violated chapter 93A by misrepresenting future compensation during hiring negotiations).

Plaintiff attempts to pry open the zip-lock of Manning and its progeny by highlighting the commercial context of Plaintiff's hire, arguing that Zipcar withheld information about the Avis deal at the same time it "sought to consummate that very transaction" by hiring Plaintiff in order to bolster its credibility as a tech-savvy company. However, two of the cases

Plaintiff relies on are distinguishable in that they involve misrepresentations during negotiations to form joint ventures. See Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 35-36 (D. Mass. 1991) (denying motion to dismiss 93A counterclaim where plaintiffs allegedly engaged in deceptive conduct during negotiations to form a joint corporate venture); Goldbaum v. Weiss, 738 N.E.2d 1154, 1157 (Mass. App. Ct. 2000) (93A count stands where defendant engaged in sham negotiations to form a joint enterprise). One case provides plaintiff some wiggle room because it involves misconduct before and after the employment agreement. See Mitchelson v. Aviation Simulation Tech., Inc., 582 F. Supp. 1, 2 (D. Mass 1983). In Mitchelson, the court denied summary judgment where plaintiff alleged improper coercion before and after the termination of the employment relationship, concluding, "Taken as a whole, the allegations . . . may not be characterized fairly as 'arising out of an employment contract.'" Id. In contrast, here the dispute over the stock options arises out of the employment agreement that grants them.[1] See Powderly v. MetraByte Corp., 866 F. Supp. 39, 44 n.11 (D. Mass. 1994)

---

[1] In his brief, a Plaintiff claims he did business with Defendant as a consultant prior to the business relationship. Plaintiff asserts that the "white paper" provided to Zipcar made him a quasi-consultant before he signed the employment agreement, but the complaint states unequivocally that Plaintiff sent the document to Defendant's representatives "[a]s part of the recruiting process" and in anticipation of employment negotiations. Compl. ¶ 18.

(distinguishing <u>Mitchelson</u> and dismissing 93A claim where plaintiff's claim "rests on the very Agreement that created an employee/employer relationship"); see also <u>Sargent v. Tenaska</u>, 914 F. Supp. 722, 731 (D. Mass. 1996) (granting summary judgment to employer; although "unfair or deceptive conduct occurred *before* and *after* – but not *during*" plaintiff's employment, claim "stems from the company's failure to tender certain interests" provided for in employment contact) (emphasis in original).

Finally, Plaintiff argues that a recent opinion offers him a ray of hope in this area, insofar as it observed that a former employee of a law firm *could* assert a chapter 93A violation for false statements made by his former employer to the plaintiff's potential employers and clients. <u>Ray v. Ropes & Gray, LLP</u>, – F. Supp. 2d –, 2013 WL 4407099, at *10 (D. Mass. Aug. 16, 2013). However, the <u>Ray</u> court granted summary judgment to the defendant, observing that the "employee exception" foreclosed a 93A claim for acts committed during employment, and the plaintiff provided only vague details about any unfair competition practices committed after he had left the defendant firm and started his own. <u>Id.</u> While Plaintiff's employ may have been a chip at the Avis-Zipcar bargaining table, any dispute arising out of the "hiring and firing" of Plaintiff falls outside the purview of chapter 93A. <u>Manning</u>, 444 N.E.2d at 1265.

## **IV. ORDER**

The Defendant's motion to dismiss count 7 (Docket No. 38) is **ALLOWED**.

                                /s/ PATTI B. SARIS
                                Patti B. Saris
                                United States District Judge